IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENWOOD DIVISION

| | | |
|---|---|---|
| Rebecca Shepherd, | ) | |
| | ) | Civil Action No. 8:07-1184-WMC |
| Plaintiff, | ) | |
| | ) | **O R D E R** |
| vs. | ) | |
| | ) | |
| Geo. W. Park Seed Company, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. In her complaint, the plaintiff alleged that the defendant, her former employer, discriminated against her by terminating her employment because she was pregnant in violation of the Pregnancy Discrimination Act, which amended Title VII of the Civil Rights Act of 1964 to expand the definition of "sex" to include pregnancy and related conditions. *See* 42 U.S.C. § 2000e(k).

The case was referred to this court for disposition on September 4, 2007, pursuant to Title 28, United States Code, Section 636(c), and Local Rule 73.01(B), DSC, by order of the Honorable G. Ross Anderson, Jr., United States District Judge, and upon consent of the parties.

## **FACTS PRESENTED**

Defendant Park Seed is a publicly-owned company located in Greenwood, South Carolina, that sells plants, seeds, and other gardening supplies. The plaintiff began her employment as Park Seed's Public Relations Director on August 15, 2005, and was initially placed under the supervision of Jeff Smith ("Smith"), Park Seed's Creative Director (pl. aff. ¶ 6; Smith aff. ¶3). According to the plaintiff, her initial job duties related to

establishing contacts with garden writers and creating press releases (pl. dep. 16, 22-23; Smith dep. 25).   The defendant contends that within weeks of the plaintiff beginning employment, Smith and other company officials noticed the plaintiff's poor performance and poor quality of work (Smith aff. ¶ 3; Mark Hyatt aff. ¶ 4).   The defendant contends that "great efforts" were made to help the plaintiff improve her job performance, to no avail (Rik Binet aff. ¶ 7).  The defendant further contends that because of her performance issues the plaintiff was moved from Smith's supervision to the direct supervision of the defendant's then Chief Marketing Officer, Mark Hyatt (Smith aff. ¶ 4; Hyatt aff. ¶ 4).   The defendant claims that when that attempt at helping the plaintiff to improve failed, Hyatt changed the plaintiff's job responsibilities to find duties that "would be a better match for the plaintiff's limited skill set" (def. m.s.j. 4; Hyatt aff. ¶ 6).   The plaintiff's initial supervisor, Smith, however, confirmed that the reason for the move was that "they were expanding the function and had more projects they wanted her to work on" (Smith dep., ex. 1 at 2; *see* Smith dep. 12-14 (affirming EEOC testimony)).  According to the plaintiff, Smith and Hyatt praised her work, and when she received input from Smith with regard to her work product, his involvement was positive and constructive (pl. aff. ¶¶ 9-10).  After being moved under the supervision of Hyatt, the plaintiff's job duties expanded to include providing greater assistance to the internet group (*id.* ¶¶ 12-13).  No one told the plaintiff that the move to Hyatt's supervision had anything to do with perceived deficiencies in her performance (*id.* ¶ 12).

Neither Smith nor Hyatt documented any problems with the plaintiff's performance, and neither could testify to any instance in which the plaintiff was ever warned about her performance (Hyatt dep. 17; Smith dep. 27-29).  Neither Smith nor Hyatt are aware of any work created by the plaintiff that was not used by the defendant (Smith dep. 40; Hyatt dep. 42).  Smith testified in his deposition regarding a press release in which he was "a little disappointed."  He did not discuss the matter with the plaintiff, and this is the

2

only instance in which he perceived the plaintiff's work as substandard in any way (Smith dep. 42).  The plaintiff testified that no one ever spoke to her or in any way communicated to her any dissatisfaction with the manner in which she performed her duties (pl. dep. 48, 51, 55; pl. aff. ¶ 19).  The plaintiff testified that the only feedback she received regarding her performance was positive and constructive (pl. aff.  ¶ 38; pl. dep. 48, 51, 55).

In October 2005, the plaintiff worked closely with Hyatt to develop a PowerPoint presentation based solely on Hyatt's guidance (pl. aff. ¶ 20; pl. dep. 83-84; Hyatt dep. 18 ("I worked with her directly to prepare it."); *see* Binet dep. at 159-61).  The plaintiff rehearsed the presentation with Hyatt and delivered the presentation as rehearsed in mid-October, after which both Binet and Hyatt praised the plaintiff's performance (pl. aff. ¶¶ 20- 22; pl. dep. 84, ex. 6).  Moreover, Binet approved all of the objectives presented by the plaintiff and Hyatt with the exception of one recommendation that was deferred solely for cost considerations (pl. aff. ¶ 23).  The plaintiff worked with Hyatt on the objectives approved by Binet in the following weeks.  Binet continued to praise the plaintiff and remarked on more than one occasion that she "get[s] it" (pl. aff. ¶¶ 24-26).  Hyatt also congratulated her on a number of occasions when the defendant was mentioned in news stories (pl. aff. ¶ 27).  Hyatt was also enthusiastic about the plaintiff's work on the "Seasons Growing" promotion for Christmas 2005, and Binet told her that he thought the mailing was wonderful (pl. aff. ¶ 30.)

According to the defendant, in November 2005 company officials determined that the plaintiff's performance was not improving and that she should be terminated from employment (Binet aff. ¶ 7; Hyatt aff. ¶ 7).  Hyatt testified that he told then Human Resources Director Dawn Gilbert of the decision to terminate the plaintiff's employment and asked her to prepare the necessary paperwork and schedule a meeting with the plaintiff (Hyatt aff. ¶ 7).

On or about November 30, 2005, the plaintiff learned that she was 20 weeks pregnant with her first child.  She immediately told her co-workers and superiors, including Smith and Hyatt, that she was pregnant (pl. aff. ¶¶ 31-32).  On or about Friday, December 2, 2005, Gilbert informed the plaintiff that she had been selected for a drug test (pl. aff. ¶ 33; pl. dep. 28).  At that time, the plaintiff informed Gilbert that she was pregnant (pl. dep. 32).  The plaintiff had already informed Smith and Hyatt and other co-workers that she was pregnant prior to the drug test (pl. dep. 34).

During the first week of December 2005, the plaintiff met with Hyatt, and they discussed what the plaintiff could do so that her expected leave would have minimal negative impact on the defendant's busy season and some large upcoming activities on which she was working (pl. aff. ¶ 34; pl. dep. 45-47).

On Friday, December 7, 2005, Hyatt and Gilbert came into the plaintiff's office and told her that she was being terminated from employment.  Hyatt told the plaintiff that it "wasn't working out" (pl. dep. 37).  When the plaintiff asked whether there was anything she could have done, Hyatt informed her there was nothing she could have done differently (pl. aff. ¶ 41; pl. dep 38, 88).  The plaintiff requested a letter further clarifying the reason for her termination (pl. dep. 88, ex. 10).  The letter states that the plaintiff was being terminated effective immediately "as a part of the Company's administrative reorganization due to ongoing losses and a need to restructure."  There is no mention of the plaintiff's performance in the letter (pl. dep., ex. 10).  The letter is signed by Hyatt.  *Id.*

In his affidavit, Binet states that he made the decision to terminate the plaintiff's employment, and he instructed Hyatt to proceed with the termination (Binet aff. ¶ 8).  However, in his deposition, Binet testified that he was "not totally sure" who made the decision, but he encouraged Hyatt to terminate the plaintiff's employment, and Hyatt "ultimately agreed" (Binet dep. 149-51).

4

Following the plaintiff's termination, her duties were taken over by Claire Kuhl, who was already an employee of the defendant and who is identified by the defendant as a disabled female over the age of 40 (Binet dep. 167; pl. aff. ¶ 42; Smith dep. 36).

The plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging pregnancy discrimination. During the EEOC investigation and in his deposition in this case, Binet stated that the plaintiff was not terminated because of any reorganization but rather was terminated because of poor performance (Binet dep. 156, ex. 1 at 11). The EEOC issued a Notice of Right to Sue, and this lawsuit was filed on April 8, 2005.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

Under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973), the allocation of proof is as follows: (1) the plaintiff-employee must first establish a *prima facie* case of discrimination; (2) if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant-employer to articulate a legitimate non-discriminatory reason for its actions; and (3) if the defendant carries this burden, the plaintiff must then establish by a preponderance of the evidence that the reason articulated by the employer is a pretext to mask unlawful discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas,* 411 U.S. at 802-03).

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie*

6

case, does not compel judgment for the plaintiff, because "[i]t is not enough ... to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 147 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 519) (emphasis in original). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id*. It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48. Pretext analysis does not convert Title VII into a vehicle for challenging unfair – but nondiscriminatory – employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir. 1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *Ross*, 759 F.2d at 365.

> In order to establish a *prima facie* case, the plaintiff must show:
>
> "(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class."

*Miles v. Dell, Inc.*, 429 F.3d 480, 485 (4th Cir. 2006) (quoting *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc)).

The plaintiff clearly meets the first two elements. While the defendant argues that the plaintiff cannot show that she was performing her job duties at a level that met her employer's legitimate expectations, the plaintiff has raised issues of material fact on the third element. Specifically, the assertion that the plaintiff was a poor performer is contradicted by numerous facts of record, including the fact that Binet, Hyatt, and Smith all told the plaintiff she was doing a good job; that no one criticized the plaintiff's work; that no one told the plaintiff that she was not doing well; that no one told the plaintiff that her job was in any jeopardy; that Hyatt stated that there was nothing the plaintiff could have done

7

to avoid termination; that there was no mention of performance as a reason in the termination letter; and that there is a complete absence of documentation to support any claim of poor performance.  Furthermore, the person who took on the plaintiff's job duties was not pregnant.[1]    Accordingly, the plaintiff has established a *prima facie* case of discrimination.

The defendant has come forward with a legitimate, nondiscriminatory reason for the plaintiff's termination from employment.  Accordingly, in order to survive summary judgment, the plaintiff must show evidence that the reason articulated by the employer, her alleged poor job performance, is a pretext to mask unlawful discrimination.

The defendant argues that the plaintiff must present evidence that is different from, or in addition to, the evidence upon which she relies for her *prima facie* case (def. m.s.j. 17).  However, as argued by the plaintiff, "the trier of fact may . . . consider the evidence establishing the plaintiff's *prima facie* case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'"  *Reeves*, 530 U.S. at 143 (quoting *Texas Dept. of Community Affairs*, 450 U.S. at 255 n.10).

The plaintiff has raised issues of material fact as to whether the reason articulated by the employer is a pretext to mask unlawful discrimination.  Specifically, as discussed above, Binet, Hyatt, and Smith all told the plaintiff she was doing a good job; no one criticized the plaintiff's work; no one told the plaintiff that she was not doing well; no one told the plaintiff that her job was in any jeopardy; Hyatt stated that there was nothing the plaintiff could have done to avoid termination; there was no mention of performance as a reason in the termination; and there is a complete absence of documentation to support any claim of poor performance.

---

[1]The defendant makes much of the fact that the person who replaced the plaintiff is a "disabled" female over the age of 40.  However, it is undisputed that she is not a member of the protected class at issue here.

8

Further, Binet's criticisms of the plaintiff's performance raise questions. Binet testified as to three areas of purported poor performance: (1) the plaintiff's lack of contact with garden writers and lack of articles obtained for mention of the defendant's products; (2) an unspecified writing project; and (3) the plaintiff's lack of advertising knowledge (Binet dep. 98-99). On the garden writer issue, Binet acknowledged in his deposition that he has no information about this issue, that his impression was based on his understanding of how many business cards the plaintiff may have brought back from a trip to the garden writers' convention in Vancouver, and that the plaintiff told him she met only a few writers, which the plaintiff refutes (*id.* 100). Binet then stated that he could not say that the plaintiff actually showed him any cards, that the issue was not alarming, and that this was just a passing conversation (*id.* 102-03). Ultimately, Binet acknowledged that he does not know how many garden writers communicated with the plaintiff, nor could he name any garden writers that the plaintiff should have contacted but failed to do so (*id.* 103-104).

With respect to the number of articles, Binet acknowledged that the plaintiff was not responsible for the few articles that actually appeared because it would take an entire season for writers to grow samples and then write about them (*id.* 111). Binet ultimately conceded that he does not know how many articles the plaintiff had lined up for discussions about the defendant's products (*id*. 124). With regard to the writing project with which Binet testified he was not satisfied, he could not identify anything about the project other than it may have been a package insert (*id.* 125-26, 133-34). The plaintiff has no recollection of anyone criticizing her about a package insert (pl. aff. ¶ 48). Binet did not witness anyone speaking to the plaintiff about her work product (Binet dep. 129-30). Further, anything that was presented or used was approved by Hyatt (pl. aff. ¶ 50; Smith dep. 40; Hyatt dep. 42). Lastly, with regard to Binet's assertion that the plaintiff did not understand advertising, Binet admitted in his deposition that the plaintiff did not have responsibility for media placement (Binet dep. 138).

The defendant also claims that because of the plaintiff's poor performance, the plaintiff became a "rehabilitation project" for Hyatt (*id.* 97). However, Binet acknowledged that he has no actual knowledge of Hyatt doing anything to help improve the plaintiff's performance (*id.* 146-47). Binet also ultimately acknowledged that, notwithstanding his testimony about "find[ing] a job which [the plaintiff's] skills were better suited," he could not identify any duties removed from her (*id.* 138-39). Hyatt also could not identify any duties removed from the plaintiff (Hyatt dep. 43). Further, Binet testified that when the plaintiff "was shuttled off to the internet copy writing area as part of a rehab program" . . . "she was still supposed to be doing the public relations work too" (Binet dep. 138-39).

Here, the timing of the plaintiff's termination from employment also raises issues of fact. Although temporal proximity often is used to establish a *prima facie* inference of discrimination, under *Reeves*, it also can evidence pretext in the face of an argument that the onset of a protected basis and the timing of a termination are merely coincidental. *E.g. Bowman v. Holopack Intern. Corp.*, 2007 WL 4481130 * 2 (D. S.C. 2007) (Currie, J); *see id.* at *15 ("Considered in the light most favorable to the Plaintiff, this evidence is sufficient to establish a causal connection as well as pretext to avoid summary judgment on this claim.") (Marchant, MJ). Adverse employment actions on the heels of a pregnancy disclosure can create an issue of pretext when the employer asserts poor performance only after a pregnancy disclosure. *See, e.g., EEOC v. Yenkin-Majestic Paint Corp.*, 112 F.3d 831, 834 (6th Cir. 1997) ("the issuance of . . . [the] first unfavorable evaluation shortly after [the plaintiff] notified her superiors of her pregnancy" supports a finding that the "explanation of 'corporate restructuring' was a pretext for discrimination."); *Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 158 (1st Cir. 1990) (affirming finding of discrimination where "apart from the Bank's knowledge of plaintiff's pregnancy, nothing changed between the date plaintiff was promoted to operations officer and the date she was terminated").

The defendant claims that the decision to terminate the plaintiff from employment was made weeks before she was actually terminated and that at the time the decision was made nobody knew that the plaintiff was pregnant.  Accordingly, the issue becomes whether the defendant did, in fact, make the decision weeks earlier.  Hyatt testified that he "capitulated" to the demand to terminate the plaintiff "some time around" the October 14th PowerPoint presentation (Hyatt dep. 28).  No one can explain, however, why the defendant waited nearly two months – but only one week after learning of the plaintiff's pregnancy – to carry out the termination.  The plaintiff points to evidence that raises questions as to the true timing of the decision to terminate her employment:  (1) Both Hyatt and Binet praised the plaintiff for the October 14th PowerPoint presentation; (2) Hyatt assigned the plaintiff tasks relating to the Festival of Flowers up to the time of her expected maternity leave; (3) drug testing the plaintiff after the Human Resources Director knew of the decision to terminate the plaintiff's employment makes no sense; (4) after the PowerPoint presentation, Binet discussed with the plaintiff what she should include in her objectives the next year; and (5) the defendant's witnesses concede that they never gave the plaintiff any reason to believe that her employment was in jeopardy.

As argued by the plaintiff, there is also evidence that a person other than the one cited by the defendant drove the decision to terminate the plaintiff's employment, which can raise an issue of material fact.  *See Reeves*, 530 U.S. at 152-53; *see also EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 854-55 (4th Cir. 2001).  The defendant identified Binet as the decision-maker with respect to the plaintiff's termination (Binet aff. ¶ 8).  However, in his deposition, Binet testified that the was "not totally sure," who made the decision, that he merely encouraged the termination, but that Hyatt was the one who terminated the plaintiff ( Binet dep. 149-50).  Binet testified that the decision was not fully made until Hyatt made the decision (*id*. 151).  Binet also stated that he had no prior knowledge that the termination was going to occur (*id.* 153-54).

11

Furthermore, the defendant's shifting reasons for the plaintiff's termination also raise issues of material fact. Hyatt first told the plaintiff that it was just "not working out," but told her there was nothing she could have done (pl. aff. ¶ 41). The defendant then provided the plaintiff with a letter that stated her termination was purely part of an economic-based reorganization (pl. dep., ex. 10), which it now admits is false (see Binet dep. 156, ex. 1 at 11). Later, the defendant asserted performance as a basis for the plaintiff's termination, but only after she filed an EEOC Charge. The defendant gave the plaintiff one justification and the court another. *See Alvarado v. Board of Trustees*, 928 F.2d 118, 122 (4th Cir. 1991) (finding pretext where the plaintiff was told he was terminated because of a lack of work, but at trial the defendant maintained that the plaintiff was terminated for unsatisfactory job performance). Contradicting, shifting, and changing reasons are well-established grounds for the finding of pretext. *See Sears Roebuck & Co.*, 243 F.3d at 852-53 ("the fact that Sears has offered different justifications at different times . . . is, in and of itself, probative of pretext") (citations omitted). Accordingly, the plaintiff has raised issues of material fact as to whether the defendant's stated reason for her termination from employment, her alleged poor job performance, is a pretext to mask unlawful discrimination.

## CONCLUSION

Wherefore, based upon the foregoing, the defendant's motion for summary judgment (doc. 41) is denied.

IT IS SO ORDERED.

s/William M. Catoe
United States Magistrate Judge

August 26, 2008

Greenville, South Carolina

12